OPINION OF THE COURT
DiPaola, P. J.
In the information, defendant was charged by a Nassau *544 County police officer with violating Penal Law § 240.20 (3) in that in a public place, with the intent to cause public inconvenience, annoyance or alarm or recklessly creating a risk thereof, he committed the violation of disorderly conduct by using abusive or obscene language or making obscene gestures. It was alleged that on November 17, 1989 at about 11:15 p.m. at the Sunrise Cinemas in Valley Stream, defendant shouted, "fuck you,” and grabbed his genitals while shouting, "eat this.” It was further asserted that defendant was then standing in front of approximately 100 people including the arresting officer.
A pretrial motion to dismiss was brought by defendant and granted (People v Perkins, 147 Misc 2d 325). In opposing said motion, the People set forth uncontroverted allegations that there was a long queue at the Sunrise Cinemas on the subject night and that defendant attempted to cut in at the front. The cinema’s security stopped him and told him to go to the back. While at the end of the line, defendant was said to have become boisterous and vulgar. The cinema’s security requested the police to ask defendant to leave the premises. When the police did so, defendant shouted, "fuck you.” He then allegedly grabbed his genitals and was yelling, "eat this.”
The subject provision (Penal Law § 240.20 [3]) states,
"A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof * * *
"3. In a public place, he uses abusive or obscene language, or makes an obscene gesture”.
Any discussion of a statutory provision’s constitutionality should begin with the recognition that there is a strong presumption that a statutory provision which has been duly enacted by the Legislature is constitutional and that this presumption is overborne only when the provision is demonstrated to be invalid beyond a reasonable doubt (People v Lang, 36 NY2d 366, 370; McKinney’s Cons Laws of NY, Book 1, Statutes § 150 [a]). It has been further observed that such provisions should be construed, if possible, so as to uphold their constitutionality (McKinney’s Cons Laws of NY, Book 1, Statutes § 150 [c]). The provision which has been struck down by the court below in the case at bar has already been construed as constitutional by the Court of Appeals (People v Todaro, 26 NY2d 325, 327, 329 [1970]; see also, People v Feiner, 300 NY 391 [1950], affd 340 US 315 [1951]).
*545 Consideration of the Court of Appeals more recent decision in People v Dietze (75 NY2d 47) does not require a different result. In said decision, the court rendered invalid a provision stating,
"A person is guilty of harassment when, with intent to harass, annoy or alarm another person * * *
"2. In a public place, he uses abusive or obscene language, or makes an obscene gesture” (Penal Law § 240.25 [2]).
The court observed, inter alla, that "At the least, any proscription of pure speech must be sharply limited to words which, by their utterance alone, inflict injury or tend naturally to evoke immediate violence or other breach of the peace” (People v Dietze, supra, at 52).
The language of the statutory provision in the case before us differs from that struck down in Dietze (supra) to the extent that it proscribes speech and gestures affected "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof’ (Penal Law § 240.20 [3]). Although the two provisions involve essentially the same conduct, the distinction to be drawn is that one provision (harassment) is directed toward an individual whereas the other (disorderly conduct) is directed toward the public in general (People v Todaro, supra, at 330). This distinction should not be deemed to be one without a difference, inasmuch as it is abundantly clear that the disorderly conduct provision seeks to proscribe "words which, by their utterance alone, inflict injury or tend naturally to evoke immediate violence or other breach of the peace” (People v Dietze, supra, at 52).
What, within this context, constitutes "injury,” "immediate violence,” and "other breach of the peace” has long been a subject of judicial assessment (see, People v Munafo, 50 NY2d 326, 331; People v Feiner, supra, at 401-402; People v Canner, 88 Misc 2d 85 [App Term, 2d & 11th Jud Dists], affd on opn below 40 NY2d 886). The United States Supreme Court has observed, however, that "There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which [has] never been thought to raise any Constitutional problem” (Chaplinsky v New Hampshire, 315 US 568, 571-572). Within this category, the court expressly included "the lewd and obscene, the profane, the libelous, and the insulting or 'fighting’ words — those which by their very utterance inflict injury or tend to incite an immediate breach of the peace” (supra, at 572).
*546 In the case at bar, an examination of the language and gesture attributed to defendant in front of approximately 100 people, as detailed in the information, leads to the inescapable conclusion that the same might, under the circumstances, have constituted lewd, obscene, profane, and insulting or "fighting” words as expressly recognized as punishable in Chqplinsky (supra). If any reasonable doubt remains with respect to whether the subject provision is overbroad or passes constitutional muster, the provision should on its face be declared valid (People v Lang, supra).
To the extent that decisions of lower courts outside of this Department conflict with the foregoing (People v Cody, 147 Misc 2d 588; People v Blanchette, 147 Misc 2d 50), they should not be followed.
Parenthetically, brief note might also be taken of recent events that demonstrate the acute void which could ensue with respect to the maintenance of public order at theaters and late-night cinemas if the subject disorderly conduct provision were nullified. In this day and age when the "real show” at such events may as likely occur off the screen as on, or outside the building as inside, theaters and cinemas have had to close their doors due to public chaos rather than a lack of attendance. When this happens, the freedom to choose available to the law-abiding is diminished. Enforcement of the subject provision, on the other hand, serves to maximize choice, except for those whose words and gestures are delivered "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof’ (Penal Law § 240.20 [3]).
We do not pass upon the guilt or innocence of the instant defendant or, upon the present record, on any other issue.
Stark and Ingrassia, JJ., concur.
Order unanimously reversed upon the law, information reinstated and case remanded for further proceedings.