*383 OPINION OF THE COURT
Marcy L. Kahn, J.
Defendant Paul Stephen is charged with disorderly conduct (Penal Law § 240.20 [1]) and resisting arrest (Penal Law § 205.30). An additional count of disorderly conduct (Penal Law § 240.20 [3]) was previously dismissed on the People’s motion.
In a pretrial omnibus motion, defendant has moved to dismiss the remaining disorderly conduct count on the grounds that Penal Law § 240.20 (1) on its face and as applied to him unconstitutionally penalizes protected forms of expression; to dismiss both of the remaining charges in the accusatory instrument as facially insufficient pursuant to CPL 170.30 (1) (a) and 170.35; and for various other forms of relief. For the reasons stated, the motions to dismiss are granted.
I
The accusatory instrument in this case states in pertinent part:
"On October 30, 1991, at about 0400 hours at [the corner of] 150th Street and Broadway * * * [Police Officer William McGill] states that he observed defendant in a store clutching his genital area with his hands and yelling at deponent, 'Fuck you,’ 'If you were in jail, I’d fuck you, you’d be my bitch,’ and deponent further states defendant followed deponent out into the street repeating the above statements and actions, as well as yelling 'If you didn’t have that gun and badge, I’d kick your ass, I’d kill you,’ and that a crowd of approximately 15-20 people gathered who joined the defendant yelling, 'Yeah, fuck the police.’
"Deponent further states that as he was placing defendant under arrest at the above location, defendant struggled with deponent violently, flailing his arms, twisting and turning his body, and butting deponent in the chest with his head, refusing to be handcuffed.”
Focusing first on the charge of disorderly conduct, Penal Law § 240.20 (1) provides as follows:
"A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof:
"1. He engages in fighting or in violent, tumultuous or threatening behavior”.
Defendant first argues that this statute is unconstitutionally *384 overbroad on its face and must be struck down for the reasons set forth in People v Dietze (75 NY2d 47 [1989]). In Dietze, the Court of Appeals declared subdivision (2) of the harassment statute (Penal Law § 240.25 [2]) to be unconstitutional on its face under both the Federal and State Constitutions because it impermissibly penalized protected forms of expression. While defendant concedes that Dietze involved a construction of a subdivision of the harassment statute, rather than the disorderly conduct statute, he maintains that the court’s reasoning in that case applies with equal force here.
Although some lower courts have held that Dietze (supra) compels a finding that the counterpart subdivision of the disorderly conduct statute (Penal Law § 240.20 [3]) is similarly unconstitutionally overbroad on its face (e.g., People v Peralta, NYLJ, Feb. 1, 1991, at 22, col 6 [Crim Ct, NY County]; People v Blanchette, 147 Misc 2d 50 [Watertown City Ct 1990]; People v Cody, 147 Misc 2d 588 [Rochester City Ct 1990]; contra, People v Perkins, 150 Misc 2d 543 [App Term, 2d Dept 1991], revg 147 Misc 2d 325 [Dist Ct, Nassau County 1990]; People v Baker, 150 Misc 2d 713 [Mount Vernon City Ct 1991]), in this case the charge under the counterpart subdivision of Penal Law § 240.20 (3) has already been dismissed and we are dealing instead with a charge under Penal Law § 240.20 (1).
Efforts to extend Dietze (supra) to other subdivisions of the disorderly conduct statute and to the aggravated harassment statute (Penal Law § 240.30) have generally been unsuccessful. (E.g., People v Little, NYLJ, July 9, 1991, at 23, col 2 [Crim Ct, NY County] [§ 240.20 (1)]; People v Reynolds, 147 Misc 2d 29 [Watertown City Ct 1990] [§ 240.30 (1)]; People v Vassallo, NYLJ, May 8, 1990, at 27, col 1 [Crim Ct, NY County] [§ 240.25 (5)].)
Initially, it must be recognized that a strong presumption of constitutionality attaches to State statutes. (Matter of Quinton A., 49 NY2d 328 [1980]; see, People v Pagnotta, 25 NY2d 333, 337 [1969].) Whenever possible, a court must construe each statute in a manner which would avoid constitutional defects. (People v Liberta, 64 NY2d 152, 171 [1984], cert denied 471 US 1020 [1985]; McKinney’s Cons Laws of NY, Book 1, Statutes § 150 [c].) The court should strike down a statute as unconstitutional only as a last resort, and only when unconstitutionality is demonstrated beyond a reasonable doubt. (Defiance Milk Prods. Co. v Du Mond, 309 NY 537, 540-541 [1956].)
Here, defendant has failed to meet his burden of establish *385 ing beyond a reasonable doubt that the statute impinges upon protected speech. This subdivision of the statute quite clearly punishes conduct (i.e., "fighting or * * * violent, tumultuous or threatening behavior” [emphasis added]), rather than speech, as was the case in Dietze. Although expression may accompany such behavior, there is no reasonable possibility that this statute presents "a significant risk of prosecution for the mere exercise of free speech.” (Cf., People v Dietze, 75 NY2d, at 50.) The statute is easily and fairly susceptible of such an interpretation and can thus be construed to meet constitutional requirements. (Cf., People v Dietze, supra, at 52.) Accordingly, defendant’s facial overbreadth challenge under the Federal and State Constitutions is rejected.
II
Defendant further contends that even if the statute is not invalid on its face, as applied to him in this case, it penalizes constitutionally protected expression. As no claim is advanced here that any fighting occurred, the issue becomes whether defendant’s actions in repeatedly clutching his genitals and yelling offensive epithets at the police officer constituted impermissible violent, tumultuous or threatening behavior, where a crowd gathered and joined the defendant’s chants on a city street at 4:00 a.m., or whether such activities amounted to speech protected by the First and Fourteenth Amendments to the United States Constitution and by article I, § 8 of the New York State Constitution.
To answer this question, one must first identify the theory under which the People bring this prosecution. Can it be said that defendant’s actions as described in the accusatory instrument come under the proscriptions of behavior which is "violent” or "tumultuous”? Those terms have been defined in the Practice Commentaries to another section of Penal Law article 240, riot in the second degree, as follows: "The phrase 'tumultuous and violent conduct,’ however, in itself clearly means much more than mere loud noise or ordinary disturbance. 'It is designed to connote frightening mob behavior involving ominous threats of injury, stone throwing or other such terrorizing acts.’ Denzer and McQuillan, Practice Commentary to § 240.05, McKinney’s Penal Law (1967).” (Donnino, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law § 240.05 [1989].)
Similarly, Webster’s Third New International Dictionary *386 (1986) defines tumult as "disorderly and violent movement, agitation or milling about, of a crowd accompanied usually with great uproar and confusion of voices;” violence is defined as "exertion of any physical force so as to injure or abuse”.
Clearly, here defendant is not accused of stone throwing or terrorizing acts, nor of any violent movement or use of physical force. Neither can any reasonable person have understood the defendant’s comments to have been ominous, serious threats to kill, sodomize or assault the officer. According to the allegations of the accusatory instrument, the defendant merely made loud, derisive, taunting comments and vulgar and demeaning gestures, and some of his comments were repeated by members of a crowd which formed at the scene. While defendant’s alleged behavior can be described as provocative, offensive and verbally abusive, under either the definitions employed by the commentators or those in common usage, it simply was neither "violent” nor "tumultuous.” (See, People v Little, supra; People v Mighty, 142 Misc 2d 37 [Rochester City Ct 1988].)
Thus, for defendant’s conduct to come within the proscription of section 240.20 (1), the People must be proceeding on the theory that the defendant engaged in "threatening behavior.”
Ill
It has long been recognized that the guarantees of freedom of expression under the First and Fourteenth Amendments of the Federal Constitution are not absolute and do not prevent States from punishing certain "well-defined and narrowly limited classes of speech.” (Gooding v Wilson, 405 US 518, 522 [1972]; Chaplinsky v New Hampshire, 315 US 568, 571-572 [1942].) Federal constitutional doctrine permits prosecution of two such categories of speech which merit examination here.
Where words present a clear and present danger of inciting those listening to lawless action, they are not entitled to constitutional protections and may be punished. (Brandenburg v Ohio, 395 US 444 [1969].) To come within this class of unprotected speech, the words in question must be both (1) "directed to inciting or producing imminent lawless action,” and (2) "likely to incite or produce such action.” (Supra, at 447.) Where no listeners are being incited, or the remarks are not likely to produce imminent disorder, the speaker’s comments remain subject to constitutional protections. (Hess v *387 Indiana, 414 US 105 [1973]; see, Watts v United States, 394 US 705 [1969].) Moreover, it cannot be assumed that every provocative idea will produce a riot; rather the court must examine the actual circumstances surrounding the expression and ask whether, given the particular circumstances, the expression was directed to inciting or producing imminent lawless action and was likely to do so. (Texas v Johnson, 491 US 397, 409 [1989]; see, Gooding v Wilson, supra, at 528.)
By this standard, defendant’s threats made to the officer are clearly protected speech. Utilizing common, contemporary understanding, there was no likelihood that defendant’s remarks — which were phrased in the hypothetical — would produce an immediate violent response by the persons hearing them. At worst, they counseled unlawful conduct at some future, unspecified time. In this case, there is no indication that either defendant or any member of the crowd was armed or preparing to lay hands upon the officer. Accordingly, defendant’s statements are protected speech and do not fall within the incitement exception to the First Amendment. (See, Hess v Indiana, supra; Watts v United States, supra; Gooding v Wilson, supra.)
The second class of unprotected speech relevant to this case is that category of speech constituting "fighting words,” words "which by their very utterance inflict injury or tend to incite an immediate breach of the peace,” or which are likely to provoke the average person to retaliation. (Chaplinsky v New Hampshire, supra, at 572.) The People contend that defendant’s words to the officer fall squarely within this class of actionable conduct.
While the original Chaplinsky formulation of "fighting words” may have given some impression of establishing a category of words which could be proscribed regardless of the context in which they were used, developing First Amendment doctrine in the half century since Chaplinsky was decided has continually resorted to analyzing provocative expression contextually. (E.g., Texas v Johnson, 491 US 397 [1989], supra; Lewis v City of New Orleans, 415 US 130, 134 [1974] [Powell, J., concurring]; Hess v Indiana, supra; Miller v California, 413 US 15 [1973]; Cohen v California, 403 US 15 [1971]; see, Tribe, American Constitutional Law, at 850 [2d ed 1988]; see also, Garner v Louisiana, 368 US 157 [1961].) Thus, whether particular speech constitutes "fighting words” cannot be determined outside of the context in which the speech occurs.
*388 In the context within which these words were uttered, defendant’s remarks, even with the accompanying gestures, could not be said to have a direct tendency to provoke the police officer to retaliate with acts of violence or other breach of the peace. No reasonable person witnessing the situation would have thought it likely that the police officer would have been driven to attack defendant as a direct consequence of his comments.
Moreover, the Supreme Court has held that the "fighting words” doctrine applies more narrowly to police officers, as police officers are trained and expected to exercise more restraint in response to provocation than do other citizens. (City of Houston v Hill, 482 US 451 [1987].) One of the reasons we expect the police to be less sensitive to provocation, according to the Supreme Court, is because: "[t]he freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state.” (Supra, at 462-463.)
Thus, even if reasonable civilians might have been provoked into retaliatory action by defendant’s comments, one could expect that a trained police officer would remain calm (as he apparently did). Thus, defendant’s remarks, while odious, do not come within the small class of "fighting words” for which the government may mete out punishment. (Texas v Johnson, supra.)
As defendant’s threatening comments and gestures did not present a clear and present danger of either of these types of immediate harm, and amounted to pure, protected speech, this prosecution infringes defendant’s rights of free expression under the First and Fourteenth Amendments of the Federal Constitution. Accordingly, the motion to dismiss the charge of Penal Law § 240.20 (1) on Federal constitutional grounds is granted.
IV
The safeguards provided to free expression by our State Constitution have been recognized to be more extensive than those emanating from the Federal Constitution. (See, People ex rel. Arcara v Cloud Books, 68 NY2d 553 [1986], on remand from 478 US 697 [1986].)
In Dietze (supra), the Court of Appeals noted that State as well Federal constitutional guarantees of free expression pro *389 tect even vulgar, derisive and provocative speech, unless that speech presents a clear and present danger of some serious substantive evil. (75 NY2d, at 51.) The court stated that "any proscription of pure speech must be sharply limited to words which, by their utterance alone, inflict injury or tend naturally to evoke immediate violence or other breach of the peace”. (Supra, at 52.)
In interpreting article I, § 8 of the New York State Constitution, Dietze held that where threats are sought to be penalized, they must either be serious, or should reasonably be taken to be serious. (Supra, at 53-54.) While genuine threats of physical harm may be proscribed, a crude outburst, without more, will not provide a constitutionally permissible basis for prosecution. (Supra, at 54; see, People v Todaro, 26 NY2d 325, 330 [1970].)
In this case, as in Dietze (supra), defendant’s comments provided the "crude outburst,” but nothing more. His "threats,” and even his gestures, were all hypothetical in nature, backed up by absolutely nothing which would suggest that he intended (or was able) to carry them out. Moreover, even a minimally streetwise New Yorker could not reasonably have taken defendant’s "threats” against the officer seriously.
The only appellate decision which has to date considered the ramifications of Dietze (supra) for disorderly conduct prosecutions in this State is People v Perkins (150 Misc 2d 543 [App Term, 2d Dept 1991], supra). That case involved facts very similar to those at issue here, i.e., the defendant shouted "fuck you” and grabbed his genitals, shouting "eat this” when asked by a police officer to leave the area of a movie theater ticket line in which approximately 100 people were standing. The defendant had tried to cut in line and had been ordered to the back of the line by theater security prior to the officer’s arrival. The Appellate Term found no Federal or State constitutional infirmity where the prosecution was brought under Penal Law § 240.20 (3), relying on the Chaplinsky definition of "fighting words.”
Perkins (supra) is not controlling here, however, as it did not involve section 240.20 (1) and a construction of its proscription against "threatening behavior.” Furthermore, Perkins is distinguishable on its facts, as in that case, both the officer and a private security guard had directed the defendant to leave the area prior to the questionable conduct occurring, and the defendant failed to do so, making the comments noted above in earshot of 100 people.
*390 Again, looking at the context of the expression in question, rather than merely the words which were used, in Perkins (supra), the defendant was defying both the police officer and the private security guard in a crowded public setting. Notably, his remarks apparently were not directed solely at the officer, but also at the security guard, a civilian from whom they might conceivably have evoked a retaliatory response. In this particular context, the defendant’s statements could be seen as "fighting words.” The instant case, by contrast, did not involve any order to the defendant, nor were the comments directed at anyone other than the police officer. Therefore, Perkins is not instructive for the present purposes.
For the reasons stated, the disorderly conduct charge in this case would penalize expression protected under article I, § 8 of our State Constitution. Accordingly, defendant’s motion to dismiss on State constitutional grounds is granted.
V
Defendant next argues that because the officer lacked authority to arrest him for disorderly conduct, the resisting arrest charge must be dismissed as facially insufficient. Section 205.30 of the Penal Law states in relevant part: "A person is guilty of resisting arrest when [she or he] intentionally prevents or attempts to prevent a police officer * * * from effecting an authorized arrest”.
An information is facially insufficient unless it contains facts of an evidentiary character tending to support the charges. (CPL 100.15; People v Dumas, 68 NY2d 729 [1986].) To be sufficient on its face, an information must not only provide reasonable cause to believe the defendant committed the offense charged, but must also contain nonhearsay allegations which establish, if true, every element of each offense charged and defendant’s commission thereof. (CPL 100.40.) An information which fails to satisfy these requirements is facially defective. (People v Alejandro, 70 NY2d 133 [1987].)
In this case, assuming the facts stated in the accusatory instrument to be true, the officer arrested the defendant for exercising his constitutional rights to express his views regarding members of the police department, albeit in an extremely derisive way. Because on these facts, no violation of disorderly conduct occurred, the officer was not authorized to arrest the defendant. (People v Peacock, 68 NY2d 675 [1986].) As the officer was not authorized to make an arrest at the *391 time the defendant struggled with the officer, an essential element of resisting arrest is lacking. (People v Alejandro, supra.)
Accordingly, the charge of resisting arrest is dismissed for facial insufficiency.
Conclusion
For the foregoing reasons, defendant’s motions to dismiss the charges of Penal Law § 240.20 (1) and § 205.30 are granted.