## STATE OF CONNECTICUT *v.* DEBORAH SZYMKIEWICZ
### (15253)

Callahan, Borden, Berdon, Norcott and Katz, Js.

Argued March 21—officially released July 9, 1996

*Mitchell S. Brody*, assistant state's attorney, with whom, on the brief, were *Kevin T. Kane*, state's attorney, and *Theresa Ferryman*, deputy assistant state's attorney, for the appellant (state).

*Scott M. Jones*, deputy assistant public defender, for the appellee (defendant).

CALLAHAN, J. The defendant, Deborah Szymkiewicz, was convicted after a jury trial of breach of the peace in violation of General Statutes § 53a-181 (a) (1).[1] The defendant appealed to the Appellate Court, which reversed her conviction. *State* v. *Szymkiewicz*, 36 Conn. App. 625, 652 A.2d 523 (1995). In construing § 53a-181 (a) (1) to proscribe only physical conduct,[2] the Appellate Court concluded that there was insufficient evidence to establish a violation of § 53a-181 (a) (1) because the conduct for which the defendant was prosecuted consisted only of speech. Id., 629. We granted the state's petition for certification to appeal limited to the following issues: (1) "Under the circumstances of this case, did the Appellate Court properly conclude that General Statutes § 53a-181 (a) (1) does not include speech that constitutes 'fighting words'?" and (2) "If the answer to question (1) is 'no,' was the evidence

---

[1] General Statutes § 53a-181 provides: "(a) A person is guilty of breach of the peace when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (1) Engages in fighting or in violent, tumultuous or threatening behavior in a public place; or (2) assaults or strikes another; or (3) threatens to commit any crime against another person or his property; or (4) publicly exhibits, distributes, posts up or advertises any offensive, indecent or abusive matter concerning any person; or (5) in a public place, uses abusive or obscene language or makes an obscene gesture; or (6) creates a public and hazardous or physically offensive condition by any act which he is not licensed or privileged to do.

"(b) Breach of the peace is a class B misdemeanor."

[2] The Appellate Court appears to have equated physical conduct with physical contact.

sufficient for conviction of a violation of that statute?" *State* v. *Szymkiewicz*, 233 Conn. 903, 657 A.2d 644 (1995). We reverse the judgment of the Appellate Court.

The Appellate Court deemed the following facts relevant. "The genesis of this case was the defendant's shopping trip to the Waterford Stop & Shop Supermarket [on November 24, 1991]. At the checkout counter, Kim Montigny, a store detective, asked the defendant to accompany her to the store manager's office on the mezzanine. Once there, Montigny accused the defendant of shoplifting two bags of seafood and a container of cocktail sauce. While in the manager's office, the defendant became loud and abusive, resulting in a call to the police.

"Waterford police officer Mark Willard responded and, after [conducting a brief investigation and] observing the defendant's behavior, arrested her for shoplifting [in violation of General Statutes § 53a-125b[3]] . . . . He handcuffed the defendant, and he and Montigny led the defendant down the stairs [which ended at the middle of the register line of a nearby checkout counter] and out of the store.

"When asked to cooperate and quiet down, [while being detained in the manager's office and later while being led out of the store] the defendant responded, 'Fuck you,' several times.[4] . . .

---

[3] General Statutes § 53a-125b provides in relevant part: "(a) A person is guilty of larceny in the sixth degree when he commits larceny as defined in section 53a-119 and the value of the property or service is two hundred fifty dollars or less. . . ."

The jury returned a verdict of not guilty as to this charge and that decision is not an issue in this appeal.

[4] The Appellate Court stated that the record was unclear as to the defendant's exact location at any of the various times that she used the foul language. Our review of the record reveals that the jury reasonably could have found that the defendant used such language while in the store manager's office prior to her arrest, while exiting the office and while descending the stairs from the second floor after being arrested.

"[In addition, w]hile being led down the stairs from the manager's office, the defendant addressed Montigny, saying, 'You fucking bitch. I hope you burn in hell for all eternity.'[5]

"Montigny also testified that while they were descending the stairs the defendant made a threatening remark to her. The record does not disclose the nature of the threat." *State* v. *Szymkiewicz*, supra, 36 Conn. App. 626–27. Montigny further stated that the defendant's comments and behavior while descending the stairs drew the attention of the other store customers and caused a commotion among those who were present at the bottom of the stairs.

While descending the stairs and in the view of the store customers, Willard told the defendant that if she refused to calm down, she would also be charged with breach of the peace. To this, the defendant responded, "Fuck you." The defendant was thereafter charged with breach of the peace.

Following the trial, the jury returned a verdict of guilty of breach of the peace in violation of § 53a-181 (a) (1). The trial court sentenced the defendant to six months imprisonment, execution suspended after thirty days, and imposed a $500 fine.[6]

The defendant appealed to the Appellate Court, claiming that the evidence was insufficient to support her conviction of breach of the peace. Specifically, the defendant maintained that her conduct consisted solely of speech and, therefore, was not within the ambit of subdivision (1) of § 53a-181 (a), which, according to the defendant, proscribes physical conduct only. Id., 627. The Appellate Court agreed with the defendant that there was insufficient evidence of "physical conduct" to

---

[5] Willard testified that the defendant made this comment in the presence of other store customers.

[6] The jury found the defendant not guilty of the crime of larceny.

sustain her conviction of § 53a-181 (a) (1) and reversed the trial court's judgment.

Relying on *State* v. *Indrisano*, 228 Conn. 795, 640 A.2d 986 (1994), and *State* v. *Lo Sacco*, 12 Conn. App. 481, 531 A.2d 184, cert. denied, 205 Conn. 814, 533 A.2d 568 (1987), the Appellate Court concluded that proof of physically violent conduct is required before criminal liability can be imposed pursuant to subdivision (1) of § 53a-181 (a). Because it determined from the testimony at trial that the defendant's actions consisted only of words, unaccompanied by physically violent conduct, the court concluded that there was insufficient evidence to support her conviction. *State* v. *Szymkiewicz*, supra, 36 Conn. App. 627–30.[7] This certified appeal followed.

Section 53a-181 (a) provides in relevant part that "[a] person is guilty of breach of the peace when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he [or she]: (1) Engages in fighting or in violent, tumultuous or threatening behavior in a public place . . . ." The state contends, contrary to the conclusion of the Appellate Court, that § 53a-181 (a) (1) proscribes speech as well as conduct, provided that the speech rises to the level of "fighting words," as defined in the first amendment context, at least when the words used portend imminent physical violence, as the state claims they did here. The state argues, consequently, that the defendant's words and the circumstances under which they were used were sufficient to support her conviction.[8]

---

[7] The Appellate Court did not address the state's claim that the defendant's speech amounted to fighting words and, therefore, could be punished pursuant to § 53a-181 (a) (1). The court reasoned that it did not need to address the implications of the fighting words doctrine because the case could be resolved by simply construing the breach of the peace statute to require physically violent conduct. *State* v. *Szymkiewicz*, supra, 36 Conn. App. 626–27.

[8] We note that, because statutory construction is a question of law, our review of the decision of the Appellate Court is plenary. *State* v. *Denby*,

In order to determine whether § 53a-181 (a) (1) pro-
scribes speech that can be characterized as "fighting
words," we look for guidance to the construction given
by this court to identical language contained in General
Statutes § 53a-182, the disorderly conduct statute. In
*State* v. *Indrisano*, supra, 228 Conn. 795, we were called
upon to interpret the parallel provision of § 53a-182 (a)
(1).[9] The elements of the two statutes are identical,
except that § 53a-181 (a) (1), the breach of the peace
statute, concerns behavior in a public place. In constru-
ing subdivision (1) of § 53a-182 (a), we stated that "[t]he
term 'fighting,' by its plain meaning, involves physical
force. The phrase 'violent, tumultuous or threatening
behavior' also refers to physical action. If two or more
words are grouped together, it is possible to ascertain
the meaning of a particular word by reference to its
relationship with other associated words and phrases
under the doctrine of noscitur a sociis. 2A J. Sutherland,
Statutory Construction (5th Ed. Sands 1992) § 47-16;
*State* v. *Roque*, [190 Conn. 143, 152, 460 A.2d 26 (1983)].
Applying this doctrine, the Appellate Court, in *State* v.
*Lo Sacco*, supra, [12 Conn. App. 481,] construed 'violent,
tumultuous or threatening behavior'; General Statutes
§ 53a-181a (a);[10] to mean 'conduct which actually
involves physical violence or *portends imminent phys-
ical violence.*' Id., 491. Similarly, in *State* v. *Duhan*, 38
Conn. Sup. 665, 668, 460 A.2d 496 (1982), rev'd on other
grounds, 194 Conn. 347, 481 A.2d 48 (1984), the Appel-
late Session of the Superior Court read the term 'tumul-

235 Conn. 477, 481, 668 A.2d 682 (1995); *Davis* v. *Norwich*, 232 Conn. 311,
317, 654 A.2d 1221 (1995).

[9] General Statutes § 53a-182 (a) provides in relevant part: "A person is
guilty of disorderly conduct when, with intent to cause inconvenience,
annoyance or alarm, or recklessly creating a risk thereof, he: (1) Engages
in fighting or in violent, tumultuous or threatening behavior . . . ."

[10] General Statutes § 53a-181a (a) provides in relevant part: "A person is
guilty of creating a pubic disturbance when, with intent to cause inconve-
nience, annoyance or alarm, or recklessly creating a risk thereof, he (1)
engages in fighting or violent, tumultuous or threatening behavior . . . ."

tuous' in connection with its surrounding words, 'violent' and 'threatening,' and held that, because its meaning should be ascertained by reference to those associated words, 'yelling and cursing unaccompanied by violent behavior is not prohibited by' § 53a-182 (a) (1).[11] In accordance with these decisions, we conclude that the terms 'fighting' and 'violent' lend an aspect of physicality to the more nebulous terms 'tumultuous' and 'threatening.' Thus, we conclude that subdivision (1) of § 53a-182 (a) prohibits *physical* fighting, and *physically* violent, threatening or tumultuous behavior." (Emphasis added.) *State* v. *Indrisano*, supra, 811–12.

We further noted, however, that "[t]his conclusion is consistent with the 'fighting words' limitation that must be applied when the conduct sought to be proscribed consists purely of speech. *Chaplinsky* v. *New Hampshire*, 315 U.S. 568, 573, 62 S. Ct. 766, 86 L. Ed. 1031 (1942); *State* v. *Anonymous (1978-4)*, 34 Conn. Sup. 689, 695, 389 A.2d 1270 (1978). The *Chaplinsky* doctrine permits the state to prohibit speech that has a *direct tendency* to inflict injury or to cause acts of violence or a breach of the peace by the persons to whom it is directed. See *Statewide Grievance Committee* v. *Presnick*, 18 Conn. App. 316, 559 A.2d 220 (1989)." (Emphasis added.) *State* v. *Indrisano*, supra, 228 Conn. 812.

In noting that our holding was consistent with *Chaplinsky*, we recognized that § 53a-182 (a) (1) could constitutionally proscribe speech that, under a given set of circumstances, could fairly be characterized as fighting words that portend imminent physical violence. Moreover, we recognized that fighting words, because they do portend imminent physical violence or are likely to prompt imminent physical retaliation, have a suffi-

---

[11] The Appellate Session of the Superior Court defined "tumultuous" to mean "riotous" or "turbulent." *State* v. *Duhan*, supra, 38 Conn. Sup. 668.

cient aspect of physicality such that they can constitute a violation of § 53a-182 (a) (1). Id. Accordingly, a fair reading of *Indrisano* indicates that speech can be proscribed not only when accompanied by actual physical conduct, but also when it can be identified as fighting words that portend physical violence.

Consequently, we conclude that § 53a-181 (a) (1) does not require proof of actual physical contact on the part of the defendant with a victim as in fact occurred in *Indrisano*, but rather that, when applied to speech, the parameters of the violent, threatening or tumultuous behavior prohibited by § 53a-181 (a) (1) are consistent with "fighting words"—i.e., speech that has a direct tendency to cause imminent acts of violence or an immediate breach of the peace. Such speech must be of such a nature that it is " 'likely to provoke the average person to retaliation.' " *Texas* v. *Johnson*, 491 U.S. 397, 409, 109 S. Ct. 2533, 105 L. Ed. 2d 342 (1989). We conclude, moreover, that the words used by the defendant here and the circumstances in which they were used classify them as "fighting words" that had the tendency to provoke imminent retaliation from the store detective[12] or violence from the store's customers who heard them. See *Lamar* v. *Banks*, 684 F.2d 714, 718 (11th Cir.

---

[12] We recognize that the *Chaplinsky* doctrine might have to be applied more narrowly when the words used by the accused are addressed to a police officer because "a properly trained officer may reasonably be expected to exercise a higher degree of restraint than the average citizen . . . ." (Internal quotation marks omitted.) *Houston* v. *Hill*, 482 U.S. 451, 462, 107 S. Ct. 2502, 96 L. Ed. 2d 398 (1987). In this case, however, the defendant does not claim and the record does not indicate that Montigny received the same level of training as that received by a police officer. Moreover, Montigny testified that her training consisted of a review of written materials provided by the store and a two week apprenticeship with an experienced store detective. Because Montigny cannot be classified in the same category as a police officer, we need not decide whether to apply the "fighting words" doctrine narrowly to Montigny. See *People* v. *Stephen*, 153 Misc. 2d 382, 390, 581 N.Y.S.2d 981 (N.Y. Crim. Ct. 1992) (distinguishing store security guard from police officer).

1982) (no requirement under fighting words doctrine for hearer of words actually to engage in violent conduct); *DiGiambattista* v. *Doherty*, 897 F. Sup. 649, 659 (D. Mass. 1995) (same); see also *Stults* v. *State*, 166 Ind. App. 461, 467, 336 N.E.2d 669 (1975); *State* v. *James M.*, 111 N.M. 473, 476, 806 P.2d 1063 (N.M. App. 1990).

The defendant claims, however, that such an application of the fighting words gloss to § 53a-181 (a) (1) would render subdivision (5) of § 53a-181 (a), which prohibits "abusive or obscene language" in a public place, mere surplusage. We disagree.

"It is a basic tenet of statutory construction that the legislature did not intend to enact meaningless provisions. *Turner* v. *Turner*, [219 Conn. 703, 713, 595 A.2d 297 (1991)]. Accordingly, care must be taken to effectuate all provisions of the statute. See *Pintavalle* v. *Valkanos*, 216 Conn. 412, 418, 581 A.2d 1050 (1990) ([a] statute should be read as a whole and interpreted so as to give effect to all of its provisions) . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Spears*, 234 Conn. 78, 93, 662 A.2d 80, cert. denied, 516 U.S. 1009, 116 S. Ct. 565, 133 L. Ed. 2d 490 (1995). Moreover, "statutes must be construed, if possible, such that no clause, sentence or word shall be superfluous, void or insignificant . . . ." *Hopkins* v. *Pac*, 180 Conn. 474, 476, 429 A.2d 952 (1980); see also *Bridgeport Hospital* v. *Commission on Human Rights & Opportunities*, 232 Conn. 91, 100–101, 653 A.2d 782 (1995). In addition, " '[i]n construing a statute . . . we will search for an effective and constitutional construction that reasonably accords with the legislature's underlying intent. *State* v. *Floyd*, 217 Conn. 73, 79, 584 A.2d 1157 (1991); *McConnell* v. *Beverly Enterprises-Connecticut, Inc.*, 209 Conn. 692, 705–706, 553 A.2d 596 (1989).' *Bartholomew* v. *Schweizer*, 217 Conn. 671, 675–76, 587 A.2d 1014 (1991)." *Fleming* v. *Garnett*, 231 Conn. 77, 88, 646 A.2d 1308 (1994).

Subdivision (1) of § 53a-181 (a) proscribes speech that properly can be characterized as fighting words when, under the totality of the circumstances, that speech amounts to "violent, tumultuous or threatening behavior" that portends violence, while subdivision (5) proscribes "abusive or obscene language." We are not persuaded that all forms of fighting words are necessarily abusive or obscene. When and if a case arises in which the prosecution proceeds under subdivision (5) of § 53a-181 (a), we will construe "abusive" and "obscene" under the particular facts of that case, taking into account, of course, the principle that the legislative language may not be considered as mere surplusage. See *Bridgeport Hospital* v. *Commission on Human Rights & Opportunities*, supra, 232 Conn. 100–101; *Hopkins* v. *Pac*, supra, 180 Conn. 476.[13]

We next turn to whether there was sufficient evidence to support the defendant's conviction under § 53a-181 (a) (1). The standard of review employed when a defendant claims the evidence was insufficient to support a conviction is well settled. "[W]e apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . *State* v. *Greenfield*, 228 Conn. 62, 76, 634 A.2d 879 (1993). . . . *State* v. *Mejia*, 233 Conn. 215, 223, 658 A.2d 571 (1995)." (Internal quotation marks omitted.) *State* v. *Bruno*, 236 Conn. 514, 538–39, 673 A.2d 1117 (1996). Moreover, "[t]his court will construe the evidence in the light most favorable to sustaining the trial court's [judgment] and will affirm the conclusion of the trier of fact if it is reasonably supported by the

---

[13] We note that the constitutionality of subdivision (5) of § 53a-181 (a) is not at issue in this case.

evidence and logical inferences drawn therefrom." (Internal quotation marks omitted.) *State* v. *Patterson,* 229 Conn. 328, 339, 641 A.2d 123 (1994); see also *State* v. *Steiger,* 218 Conn. 349, 378–79, 590 A.2d 408 (1991).

Applying those principles, we conclude that the evidence was sufficient to establish that the defendant's language constituted "fighting words" that had a tendency to incite imminent violence and, therefore, that the jury could reasonably have concluded that she engaged in conduct that was tumultuous, threatening or violent. The state presented evidence that the defendant had a heated exchange with Montigny while descending the stairs in the supermarket, during which she swore at Montigny and cursed Montigny to spend an eternity in hell. The state established, moreover, that the defendant's behavior was exhibited in plain view of the store customers and caused a commotion, resulting in an audience congregating at the bottom of the stairs. In addition, the evidence reveals that the defendant shouted an epithet at the police officer, Willard, in response to his request that she restrain herself. Lastly, the evidence establishes that the defendant issued a verbal threat to Montigny while descending the stairs.

The cumulative force of this evidence leads to the conclusion that the defendant's language could have aroused a violent reaction by not only Montigny, but also the crowd and, therefore, was violative of subdivision (1) of § 53a-181 (a). See, e.g., *Lamar* v. *Banks,* supra, 864 F.2d 719 (*Chaplinsky* does not require actual physical violence to occur; touchstone is tendency or likelihood of words to provoke violent reaction). The combination of the heated exchange between Montigny and the defendant and the defendant's threatening her, all of which occurred in front of a number of store customers, provided ample impetus for a potentially explosive situation. In sum, the defendant's language, which could have led to imminent retaliation or vio-

lence, contained a sufficient aspect of physicality to be punishable pursuant to § 53a-181 (a) (1).

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the judgment of the trial court.

In this opinion BORDEN and NORCOTT, Js., concurred.

BERDON, J., dissenting. The majority upholds the defendant Deborah Szymkiewicz's conviction for breach of the peace and her sentence of six months incarceration suspended after thirty days simply because of something she said. After what she considered to be a wrongful arrest for shoplifting, which may not have been an unreasonable belief in light of the jury finding her not guilty of that charge, while handcuffed, the defendant, in response to being told that she had to calm down or she would be charged with breach of the peace, said to the arresting officer, "Fuck you." Although those words may be vulgar, crude and repulsive, they are not "fighting words," especially when they are uttered to a police officer. Indeed, if uniformly enforced, today's decision could subject governors, legislators, judges and thousands of citizens to criminal sanctions simply because of their verbal expressions. Furthermore, the majority's opinion is contrary to the clear precedent of this court set forth in *State* v. *Indrisano*, 228 Conn. 795, 640 A.2d 986 (1994).

A review of the factual scenario is necessary to place this case in its proper context. On November 24, 1991, a store detective for the Waterford Stop & Shop observed the defendant and a companion place two plastic bags containing various seafood items and a bottle of cocktail sauce into a larger bag containing lobsters. The defendant testified that this was done so that the smaller bags would not leak upon the other

groceries in her shopping carriage. Upon arriving at the cash register, the bag containing all of the seafood items was placed on the cashier's belt. The smaller bags, however, were not removed and were not noticed by the cashier. Consequently, the goods, valued at $12.44, were not included in the total amount due, which was approximately $80. After paying the requested amount, the store detective approached the defendant and her companion at the register, accused them of shoplifting, and asked them to accompany her to the store manager's office. Both the defendant and her companion complied.

A police officer was eventually summoned to the store. Upon arriving, the officer found the store detective and the defendant engaged in an exchange of words. The officer testified that during his interview with the defendant, "[s]he was . . . somewhat upset about what was going on. Her voice was raised a little bit. She wasn't combative . . . ." Because a complaint was being lodged against her and she did not have any identification on her person, the officer was required to bring the defendant to the police station under arrest. Consequently, the defendant was handcuffed and escorted out of the store. The officer testified that while descending the stairs from the manager's office, the defendant "got into another heated shouting match with the store detective." At that point, the police officer told her that if she did not calm down she would also be charged with breach of the peace. To that warning the defendant replied, "Fuck you." In response, the officer said, "okay, it's breach of peace." Thus, the only reason the defendant was charged with a breach of the peace, pursuant to General Statutes § 53a-181 (a) (1), was because of her statement to the officer.

## I

The majority opinion is flawed for several reasons. To begin, two years ago, in *State* v. *Indrisano*, supra,

228 Conn. 795, this court construed General Statutes § 53a-182 (a) (1), which contains the *identical language* of § 53a-181 (a) (1)[1] ("[e]ngages in fighting or in violent, tumultuous or threatening behavior"), as not involving speech in order to save it from being unconstitutionally vague on its face. The court held that this provision, "as gleaned from the statutory language and its authoritative judicial gloss, [prohibited] *physically* violent and *physically* tumultuous or threatening behavior." (Emphasis in original.) Id., 811. The court explained that "we conclude that the terms 'fighting' and 'violent' lend an aspect of physicality to the more nebulous terms 'tumultuous' and 'threatening.' "[2] Id., 812. The same language is before the court today. Accordingly, § 53a-181 (a) (1) should also be interpreted in accordance with the majority opinion in *Indrisano* as referring to physical conduct and not speech.

Furthermore, to construe § 53a-181 (a) (1) as circumscribing "fighting words" would render § 53a-181 (a)

---

[1] General Statutes § 53a-181 provides in pertinent part: "(a) A person is guilty of breach of the peace when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (1) Engages in fighting or in violent, tumultuous or threatening behavior in a public place . . . ."

General Statutes § 53a-182 provides in pertinent part: "(a) A person is guilty of disorderly conduct when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (1) Engages in fighting or in violent, tumultuous or threatening behavior . . . ."

The only difference between these two provisions is that § 53a-181 (a) (1) refers to behavior "in a public place," while § 53a-182 (a) (1) does not. The defendant does not raise the issue of whether the stairs leading from the manager's office to the sales area of the store constitutes a public place within the meaning of § 53a-181 (a) (1).

[2] In *State* v. *Indrisano*, supra, 228 Conn. 812, the court never explained its statement that its interpretation of § 53a-182 (a) (1) "is consistent with the 'fighting words' limitation . . . ." A review of the facts and the court's treatment of them, however, leads one to conclude that the court was restricting subdivision (1) to *physical* conduct. The defendant's conduct in *Indrisano* had both a physical component; id., 815; ("pushing his way through a door against the will of another person") and a speech component. Id., 799–800 ("God damn, I don't have to wait. God damn it! . . . You, old

(5), which specifically refers to speech, partially superfluous. Section 53a-181 (a) (5) provides in pertinent part: "A person is guilty of breach of the peace when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he . . . in a public place, uses abusive or obscene language . . . ." The majority halfheartedly attempts to distinguish subdivisions (1) and (5), so as to include "fighting words" in the former rather than the latter, by stating: "We are not persuaded that all forms of fighting words are necessarily abusive or obscene." I agree with the majority that "fighting words" are not included under that portion of subdivision (5) that prohibits "obscene" expression. Due to their constitutional definitions, "fighting words" cannot be "obscene." *Cohen* v. *California*, 403 U.S. 15, 20, 91 S. Ct. 1780, 29 L. Ed. 2d 284, reh. denied, 404 U.S. 876, 92 S. Ct. 26, 30 L. Ed. 2d 124 (1971). "Obscene" expression "must be, in some significant way, erotic." Id. In this case, "[i]t cannot plausibly be maintained that [the defendant's] vulgar [expression] . . . would conjure up such [sexual] stimulation in anyone likely to be confronted with [it]." Id.

The only apparent constitutional interpretation of § 53a-181 (a) (5), however, is to interpret "abusive" as prohibiting "fighting words." Any broader meaning of "abusive" would be unconstitutional. *Chaplinsky* v. *New Hampshire*, 315 U.S. 568, 571–72, 62 S. Ct. 766, 86 L. Ed. 1031 (1942) (There are only "certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem. These include the lewd and obscene, the profane, the libelous, and the insulting or 'fighting' words . . . .").

The majority's opinion is bewildering and, in light of *Indrisano*, is sure to confuse the Appellate Court, which

man, stay out of this."). Yet the court discussed only the physical component, with no mention of the defendant's speech.

will likewise be unable to understand this 180 degree turn regarding the interpretation of identical language. The majority opinion can only be explained as result oriented.

## II

Even if § 53a-181 (a) (1) could be construed to proscribe "fighting words," saying "fuck you," in the context of this case, does not constitute such words. The United States Supreme Court has recognized that there are certain well defined and narrowly limited classes of speech, such as "fighting words," that are outside constitutional protection. *Chaplinsky* v. *New Hampshire*, supra, 315 U.S. 571–72. "Fighting words" are "those [words that] by their very utterance inflict injury or tend to incite an immediate breach of the peace. . . . Such words, as ordinary [persons] know, are likely to a cause a fight." (Citation omitted; internal quotation marks omitted.) Id., 572–73. Before certain speech will be deemed to be "fighting words," and placed outside first amendment protection, the state must show that the speech has more than the potential for a breach of the peace. *Texas* v. *Johnson*, 491 U.S. 397, 409, 109 S. Ct. 2533, 105 L. Ed. 2d 342 (1989) (burning flag does not constitute fighting words). The state must demonstrate that "the expression is directed to inciting or producing imminent lawless action and is likely to incite or produce such action. . . . [Fighting words must be] a direct insult or an invitation to exchange fisticuffs." (Citations omitted; internal quotation marks omitted.) Id.; see also *Hess* v. *Indiana*, 414 U.S. 105, 107, 109, 94 S. Ct. 326, 38 L. Ed. 2d 303 (1973) ("We'll take the fucking street later" did not constitute fighting words because "evidence [was] undisputed that [the defendant's] statement was not directed to any person or group in particular" and "there was no evidence, or rational inference from the import of the language, that his

words were intended to produce, and likely to produce, *imminent* disorder . . . ." [Emphasis in original.]).

Furthermore, the United States Supreme Court has held that "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers. *Houston* v. *Hill*, 482 U.S. 451, 461, 107 S. Ct. 2502, 96 L. Ed. 2d 398 (1987). The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." Id., 462–63. As Justice Powell observed: "[W]ords may or may not be 'fighting words,' depending upon the circumstances of their utterance. It is unlikely, for example, that the words said to have been used here ["you god damn mother fucking police—I am going to the superintendent of police about this] would have precipitated a physical confrontation between the middle-aged woman who spoke them and the police officer in whose presence they were uttered. The words may well have conveyed anger and frustration without provoking a violent reaction from the officer. Moreover . . . a properly trained officer may reasonably be expected to 'exercise a higher degree of restraint' than the average citizen, and thus be less likely to respond belligerently to 'fighting words.'" *Lewis* v. *City of New Orleans*, 415 U.S. 130, 135, 94 S. Ct. 970, 39 L. Ed. 2d 214 (1974) (Powell, J., concurring); *Houston* v. *Hill*, supra, 482 U.S. 462.

The majority has garbled and confused the facts in its analysis. To resolve whether an individual's speech constitutes "fighting words," a court must determine what was said, to whom was it said, the context in which it was said, and the intent of the speaker. Because fighting words must be a *directed* personal insult; see *Hess* v. *Indiana*, supra, 414 U.S. 108; the majority's reference to the customers who overheard the defendant's statements as she exited the store is wholly irrele-

vant. At no time did the defendant *direct* any statements toward the customers as a group or individually. As noted in *Cohen,* the defendant's statements were "clearly not directed to the [customers]. . . . No [customer] actually or likely to be present could reasonably have regarded the [defendant's statements] as a direct personal insult. Nor do we have here an instance of the exercise of the State's police power to prevent a speaker from intentionally provoking a given group to hostile reaction. . . . There is . . . no showing that anyone who [heard the defendant] was in fact violently aroused or that [the defendant] intended such a result." (Citations omitted; internal quotation marks omitted.) *Cohen* v. *California,* supra, 403 U.S. 20.

Moreover, the United States Supreme Court has specifically rejected the presumption that the peace will be breached merely because there is an audience that may take "serious offense at particular expression . . . ." *Texas* v. *Johnson,* supra, 491 U.S. 408. "On the contrary . . . [our precedents] recognize that a principal function of free speech under our system of government is to invite dispute. It may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger." (Internal quotation marks omitted.) Id., 408–409.

The majority also focuses on the defendant's statement to the store detective. After being arrested and handcuffed, which the defendant perceived to be wrongful, while descending the stairs outside the manager's office, the defendant stated to the store detective: "You fucking bitch. I hope you burn in hell for all eternity." For three reasons, this statement does not constitute "fighting words" within this context. First, it was after this statement was made that the officer warned the defendant that he would charge her with breach of the peace if she did not calm down. And it was because

of her statement *to the police officer*, not her statement to the store detective, that she was so charged.

Second, although this statement may constitute a directed personal insult to the store detective, the statement did not incite any violence, nor was there any evidence that it was said with the intent of inciting immediate violence. *Cohen* v. *California*, supra, 403 U.S. 20. Moreover, while handcuffed, the defendant could not have posed a threat to anyone.

Third, for first amendment purposes, a store detective is analogous to a police officer. The detective had accused the defendant of shoplifting and had detained her for questioning, actions that are within the general duties of a law enforcement officer. Accordingly, just as in the case of a police officer, a store detective is expected to exercise a higher degree of tolerance to words that may, when directed to an average citizen, constitute "fighting words." *Houston* v. *Hill*, supra, 482 U.S. 462. "The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." Id., 462–63. Indeed, on the basis of the jury's verdict finding the defendant not guilty of shoplifting, she had cause to be upset with the store detective and a right to verbally vent her frustration with respect to her arrest.

Whatever the factual predicate may be to support this conviction—the statement "fuck you" directed at the police officer or the statement "You fucking bitch[,] I hope you burn in hell for all eternity" directed at the store detective, or both—those words, under the circumstances of this case, are insufficient to constitute "fighting words." In *Lewis* v. *City of New Orleans*, supra, 415 U.S. 131 n.1, as I previously indicated, the defendant said to a police officer, who had pulled over the vehicle in which she was traveling and asked her

husband for his driver's license, " *'you god damn [mother fucking] police*—I am going to [the superintendent of police] about this.' " (Emphasis added.) With respect to that heated statement, Justice Powell observed that "[i]t is unlikely . . . that the words said to have been used here would have precipitated a physical confrontation between the middle-aged woman who spoke them and the police officer in whose presence they were uttered. The words may well have conveyed anger and frustration without provoking a violent reaction from the officer." Id., 135 (Powell, J., concurring). Similarly, it is unlikely here that the defendant's utterance, while handcuffed, would have provoked either the police officer or the store detective to violence. Rather, the defendant was simply venting her frustration and anger with the situation. Such expression is protected by the federal constitution.

Today the majority of this court may have silenced an instance of vulgar speech, but in doing so it has circumscribed our constitutional right to freedom of expression.

Accordingly, I dissent.

KATZ, J., dissenting. I agree with the majority that General Statutes § 53a-181 (a) (1) proscribes speech that properly can be characterized as "fighting words" when, under the totality of the circumstances, that speech amounts to "violent, tumultuous or threatening behavior" that portends violence. I also agree, however, with Justice Berdon's dissent that, under the totality of the circumstances, the evidence in this case was not sufficient to establish that the defendant's language constituted "fighting words."

Accordingly, I dissent.