[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case is determined solely by an issue of statutory construction. This statute in question, General Statutes § 20-340, sets forth exceptions to the licensing requirement of General Statutes § 20-330 et seq.[1]
General Statutes § 20-340 in pertinent part exempts: "(6) employees of industrial firms whose main duties concern the maintenance of plumbing and piping . . . repair and maintenance work of such, firm on its own premises. . . ."
The Plaintiff Hartford Hospital employs persons[2] who are not licensed plumbers who perform plumbing and piping repair and maintenance work on its premises. The Defendant State of Connecticut Department of Consumer Protection Plumbing and Pipe Examining Board (hereinafter "Examining Board") is established CT Page 6697 under General Statutes § 20-331 and empowered under General Statutes § 20-332 to regulate the plumbing trade.
The Examining Board on October 7, 1994, issued complaints against Hartford Hospital and three of its employees essentially charging them with performing unlicensed plumbing work at the Hospital. Hartford Hospital on November 5, 1994, petitioned the Examining Board seeking a recognition of its exemption to the licensing requirement under General Statutes § 20-340, as an industrial firm, and challenging the applicability of the licensure statutes to certain work.
The Examining Board held hearings on December 22, 1994, and March 30, 1996. It's decision was in the form of a Declaratory Ruling and was mailed January 24, 1996.
Hartford Hospital appealed such ruling on March 4, 1996, under General Statutes § 4-183 of the Uniform Administrative Procedures Act.
The Examining Board admits the Plaintiffs' aggrievement, which is apparent in that the ruling finds the Hospital and certain employees in violation of the licensure statutes.
The single issue briefed by Plaintiffs is the Hospital's entitlement to exemption under General Statutes § 20-340 (6). Issues raised in the appeal but not briefed are viewed as abandoned. Collins v. Goldberg, 28 Conn. App. 733, 738 (1992).
 When we set out to interpret the meaning of a statute our fundamental objective is to ascertain and give effect to the apparent intent of the legislature. In seeking to discern the intent we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same subject matter.
M. DeMatteo Construction Co. v. New London, 236 Conn. 710, 714-15
(1996); see Metropolitan District Commission v. AFCME, 237 Conn. 114,120 (1996); State v. Burns, 236 Conn. 18, 22-23 (1996);State v. Spears, 234 Conn. 78, 86-87, cert. denied, ___ U.S. ___,116 S.Ct. 565, 133 L.Ed.2d 490 (1995) (internal quotation marks omitted); Conway v. Wilton, 238 Conn. 653, 663-64 (1996). The Examining Board argues that "industrial firm" is limited CT Page 6698 to manufacturing concerns and does not encompass hospitals. The Plaintiffs assert that "industrial firm" means a producer of services as well as goods, and thus includes hospitals.
The dictionary definition of industry includes both meanings.[3] The restriction of industry to manufacturing is not the most common usage. Service businesses are commonly referred to as industry; i.e. insurance industry, health care industry, etc.
 Although we first look to the language of the statute, if the application reveals a latent ambiguity or inconsistency, we will go beyond the text to determine the statute's meanings. [(Conway v. Wilton, 238 Conn. 663, 665
(1996).] Moreover, we will not limit ourselves to a literal application of the statute if to do so would render other legislation meaningless.
State v. Lynkiewicz, 237 Conn. 613, 621 (1996); Castagno v.Wholean, 239 Conn. 336, 339-40 (1996).
The exemption statute was essentially a part of a legislative scheme to replace municipal licensing of skilled trades with a uniform state system of licensing, see White Oak Corporation v.Department of Consumer Protection, 12 Conn. App. 251, 256 (1987).
When construing a legislative act, it is incumbent upon the court to consider "its history, its language, the purpose it is designed to serve and the circumstances surrounding its enactment." Bahre v. Hagboom, 162 Conn. 549, 554 (1972).
In addition to aiding the tradesmen from avoiding multiple municipal license requirements, the act was designed to insure protection to the public. Conn. Joint Standing Committee Hearings, General Law, Pt. 1, 1965 Sess., p. 347-48; 61 S.Proc., Pt. 6, 1965 Sess., p. 2186, remarks of Senator Alfano.
The exemption for employees of industrial firms was one of only three exemptions in the original act. See Public Acts 1965, No. 493 § 9. The other original exemptions were those for government employees (now § 20-340 (1)) and public service company employees (now § 20-340 (2)).
The Plaintiffs argue that the purposes of the act are not advanced by denying hospitals, or producers of services, the CT Page 6699 industrial firm exemption.
The Plaintiffs assert that the public interest is the public as consumers of plumbing (or other trade) services. The Examining Board suggests a broader public interest in being protected from improper plumbing work.
A review of the specific eleven exemptions supports the Plaintiffs assertion that the public interest being protected is as consumers of trade services. The public as customers of those providing plumbing, electrical or other services which are licensed. Licensing of persons who hold themselves out to the public as qualified to perform such services assures basic expertise and building code familiarity.
Exempting municipal, state and federal facilities; theaters, carnivals, individual homeowners working on their own homes seems inconsistent with a general public health purpose behind the statutory scheme.
Government facilities and large manufacturers may very well serve more members of the public than service businesses. The exemption of government and business employees working only on their own facilities is entirely consistent with the purpose of protecting the consuming public that hires a plumber, electrician, etc., to perform the services associated with a licensed trade.
A municipality, industrial firm, theater, carnival, public service company all exempted under General Statutes § 20-340; would presumably as to their own employees not require the protections afforded an individual consumer hiring an independent contractor to perform skilled trade services.
It is also logically difficult to ascertain a difference related to General Statutes § 20-330 et seq. between a manufacturing firm such as Pratt Whitney and an insurance firm such as the Aetna. There appears to be no reason why Pratt Whitney should be exempt and Aetna subject to the licensing requirements for its own employees.
Considering the ordinary and customary usage of the term "industrial firm" and the purpose of the statutes relating to licensing General Statutes § 20-330 et seq. The term must include service providers such as the Plaintiff Hartford CT Page 6700 Hospital.
The appeal is sustained. The case is remanded to the Examining Board for proceedings consistent with this decision.
Robert F. McWeeny, J.