# STATE OF CONNECTICUT *v.* JAMES HARRIS
## (SC 17326)

Sullivan, C. J., and Borden, Norcott, Palmer and Zarella, Js.

Argued October 25, 2005—officially released February 28, 2006

*Richard E. Condon, Jr.*, assistant public defender, for the appellant (acquittee).

*Frederick W. Fawcett*, supervisory assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, *Joseph T. Corradino*, senior

assistant state's attorney, and *Alina Dionne*, law student intern, for the appellee (state).

*Opinion*

SULLIVAN, C. J. The acquittee,[1] James Harris, appeals[2] from the judgment of the trial court granting the state's petition for his continued commitment at the Whiting Forensic Division of Connecticut Valley Hospital (Whiting) for a period of time not to exceed five years. The sole issue on appeal is whether the trial court improperly denied the acquittee's motion to strike a report to the court submitted by the psychiatric security review board (board) because: (1) the report was irrelevant and unfairly prejudicial; (2) its admission violated the acquittee's rights under the confrontation clause of the United States constitution; and (3) its admission violated the acquittee's right to due process. We affirm the judgment of the trial court.

The record reveals the following relevant facts and procedural history. In 1992, the acquittee was found not guilty by reason of mental disease or defect pursuant to General Statutes § 53a-13[3] of two counts of arson in the first degree in violation of General Statutes § 53a-111 and two counts of refusing fingerprinting in violation of General Statutes § 29-17. Thereafter, the trial court conducted a hearing pursuant to General Statutes § 17a-582 (d) and (e)[4] and determined that the acquittee was

---

[1] An acquittee is "[a] person found not guilty by reason of mental disease or defect . . . ." General Statutes § 17a-580 (1).

[2] The acquittee appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[3] General Statutes § 53a-13 (a) provides: "In any prosecution for an offense, it shall be an affirmative defense that the defendant, at the time he committed the proscribed act or acts, lacked substantial capacity, as a result of mental disease or defect, either to appreciate the wrongfulness of his conduct or to control his conduct within the requirements of the law."

[4] General Statutes § 17a-582, which sets forth the posttrial procedures in cases where a defendant is adjudged not guilty by reason of insanity, provides in relevant part: "(d) The court shall commence a hearing within fifteen

a person who should be confined. It committed him to the jurisdiction of the board[5] for a period of time not to exceed ten years. The acquittee was sent to Whiting, a maximum security psychiatric hospital.

When the acquittee's term of commitment approached its conclusion in 2002, the state's attorney filed with the Superior Court a petition for continued commitment pursuant to General Statutes § 17a-593 (c).[6] Thereafter, the board held a hearing to investigate whether the acquittee should be recommitted and filed its report with the trial court. The report, which the

days of its receipt of any separate examination report or if no notice of intent to perform a separate examination has been filed under subsection (c) of this section, within twenty-five days of the filing of such initial examination report.

"(e) At the hearing, the court shall make a finding as to the mental condition of the acquittee and, considering that its primary concern is the protection of society, make one of the following orders:

"(1) If the court finds that the acquittee is a person who should be confined or conditionally released, the court shall order the acquittee committed to the jurisdiction of the board and either confined in a hospital for psychiatric disabilities or placed with the Commissioner of Mental Retardation, for custody, care and treatment pending a hearing before the board pursuant to section 17a-583; provided (A) the court shall fix a maximum term of commitment, not to exceed the maximum sentence that could have been imposed if the acquittee had been convicted of the offense . . . ."

[5] The psychiatric security review board is a six member autonomous, administrative body within the department of mental health and addiction services that oversees the involuntary commitment of people found not guilty by reason of mental disease or defect. See General Statutes §§ 17a-581 through 17a-582. The board's membership must include a psychiatrist, a psychologist, a probation expert, a layperson, an attorney who is licensed in Connecticut, and a layperson with experience in victim advocacy. General Statutes § 17a-581 (b).

[6] General Statutes § 17a-593 (c) provides: "If reasonable cause exists to believe that the acquittee remains a person with psychiatric disabilities or mentally retarded to the extent that his discharge at the expiration of his maximum term of commitment would constitute a danger to himself or others, the state's attorney, at least one hundred thirty-five days prior to such expiration, may petition the court for an order of continued commitment of the acquittee."

board is required to submit under § 17a-593 (d),[7] contained the board's factual conclusions and recommendation as to whether the court should grant the state's petition. The board concluded: "Based on the preceding facts, the [b]oard finds by clear and convincing evidence that [the acquittee] remains a person who should be confined and he has a psychiatric disability to the extent that his discharge or conditional release would constitute a danger to himself or others. Further, the [b]oard finds due to the extent of [the acquittee's] violent behavior he can only be treated safely in a maximum-security setting."

The acquittee filed motions to dismiss the state's petition for continued commitment and to strike the board's report. The trial court denied both motions and granted the state's petition for continued commitment. The acquittee then filed a motion to reargue and for reconsideration of the court's judgment in light of a Superior Court decision that had recently held § 17a-593 (c) unconstitutional.[8] The court granted the acquittee's motion to reargue, but it ultimately reaffirmed its prior judgment in favor of the state. This appeal followed. Additional facts will be set forth as necessary.

I

At the outset, we briefly review the law governing continued commitment proceedings for insanity acquittees. After a defendant is acquitted by reason

---

[7] General Statutes § 17a-593 (d) provides in relevant part: "The court shall forward any . . . petition for continued commitment of the acquittee to the board. The board shall, within ninety days of its receipt of the . . . petition, file a report with the court . . . setting forth its findings and conclusions as to whether the acquittee is a person who should be discharged. The board may hold a hearing or take other action appropriate to assist it in preparing its report."

[8] This court subsequently reversed the Superior Court's judgment in *State v. Long*, 268 Conn. 508, 541, 847 A.2d 862, cert. denied, 543 U.S. 969, 125 S. Ct. 424, 160 L. Ed. 2d 340 (2004), which we will discuss later in this opinion.

of mental disease or defect pursuant to § 53a-13, the Superior Court must conduct a hearing to assess the acquittee's mental state and to determine whether the person should be confined or released.[9] General Statutes § 17a-582 (a) and (e).[10] The acquittee bears the burden of proof at the hearing and must show by a preponderance of the evidence that he should be discharged. General Statutes § 17a-582 (f). If the court determines that the acquittee has not met this burden, it must commit him to the jurisdiction of the board for a term "not to exceed the maximum sentence that could have been imposed if the acquittee had been convicted of the offense . . . ." General Statutes § 17a-582 (e) (1) (A). The board initially determines where to confine the acquittee and monitors his progress by holding hearings and periodically reviewing his status to determine whether he should be conditionally released or discharged. See General Statutes §§ 17a-583 through 17a-592.

Prior to the expiration of the term of commitment fixed by the trial court, an acquittee may apply directly to the Superior Court for release, or the board itself may recommend discharge. General Statutes § 17a-593 (a); *State* v. *Long*, 268 Conn. 508, 520, 847 A.2d 862,

---

[9] If an acquittee is no longer mentally ill at the time of this hearing, the trial court must release him or her. See *Foucha* v. *Louisiana*, 504 U.S. 71, 83, 112 S. Ct. 1780, 118 L. Ed. 2d 437 (1992) (invalidating indefinite detention of insanity acquittees who are dangerous but no longer mentally ill); see also *Kansas* v. *Hendricks*, 521 U.S. 346, 358, 117 S. Ct. 2072, 138 L. Ed. 2d 501 (1997) (requiring proof of dangerousness plus additional factor such as mental illness or mental abnormality to commit someone as sexually violent predator).

[10] General Statutes § 17a-582 (a) provides in relevant part: "When any person charged with an offense is found not guilty by reason of mental disease or defect pursuant to section 53a-13, the court shall order such acquittee committed to the custody of the Commissioner of Mental Health and Addiction Services who shall cause such acquittee to be confined, pending an order of the court pursuant to subsection (e) of this section . . . ."

cert. denied, 543 U.S. 969, 125 S. Ct. 424, 160 L. Ed. 2d 340 (2004). In addition, the board is required to hold a hearing every two years to review the acquittee's status and to determine whether confinement still is appropriate. General Statutes § 17a-585. The board retains jurisdiction over the acquittee until his term of commitment expires or until the Superior Court rules that he should be released from the board's jurisdiction. General Statutes § 17a-582 (h).

When an acquittee reaches the end of the definite term of commitment set by the court, the state may submit a petition for continued commitment if "reasonable cause exists to believe that the acquittee remains a person with psychiatric disabilities . . . to the extent that his discharge at the expiration of his maximum term of commitment would constitute a danger to himself or others . . . ." General Statutes § 17a-593 (c). After the state files its petition, the board is required, by statute, to submit a report to the court setting forth the board's findings and conclusions as to whether discharge is warranted. General Statutes § 17a-593 (d). When making its decision, the Superior Court is not bound by the board's recommendation, but considers the board's report in addition to other evidence presented by both parties and makes its own "finding as to the mental condition of the acquittee . . . ." General Statutes § 17a-593 (g).

This statutory scheme differs from the scheme that applies to civilly committed individuals. The Probate Court, which has jurisdiction over civil commitment proceedings; see General Statutes § 17a-497 (a); may order commitment only if it finds "by clear and convincing evidence that the person complained of has psychiatric disabilities and is dangerous to himself or herself

or others or [is] gravely disabled . . . ."[11] General Statutes § 17a-498 (c). In addition, civil committees are not monitored by the board or by a similar agency. When the Probate Court periodically considers whether a civil committee should be discharged, it relies on the testimony of two court-appointed, impartial physicians, one of whom is a practicing psychiatrist.[12] General Statutes § 17a-498 (c) and (g).

In *State* v. *Metz*, 230 Conn. 400, 425, 645 A.2d 965 (1994), this court concluded that once an acquittee's definite term of commitment has expired, the state bears the same burden of proof in seeking to recommit the acquittee that it would have in civil commitment proceedings. The acquittee in *Metz* moved to dismiss the state's petition for continued commitment, which was filed as he approached the conclusion of a six year term set by the trial court. Id., 402–405. He claimed, inter alia, that § 17a-593 violated the equal protection clauses of the state and federal constitutions because civilly committed individuals and prisoners confined at mental hospitals beyond the expiration of their prison sentences were protected by the civil "clear and convincing evidence" standard of proof, while insanity

---

[11] In *Jones* v. *United States*, 463 U.S. 354, 362, 103 S. Ct. 3043, 77 L. Ed. 2d 694 (1983), an insanity acquittee argued that due process required the government to meet the clear and convincing evidence burden of proof that pertains to civil commitment proceedings before it could commit him. See *Addington* v. *Texas*, 441 U.S. 418, 432–33, 99 S. Ct. 1804, 60 L. Ed. 2d 323 (1979) (clear and convincing evidence is standard of proof in civil commitment proceedings). The court in *Jones* rejected the acquittee's claim because there are "important differences between the class of potential civil-commitment candidates and the class of insanity acquittees that justify differing standards of proof. . . . [S]ince automatic commitment . . . follows only if the *acquittee himself* advances insanity as a defense and proves that his criminal act was a product of his mental illness, there is good reason for diminished concern as to [which party should bear] the risk of error." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Jones* v. *United States*, supra, 367.

[12] There are other differences between these statutory schemes not relevant for purposes of this appeal.

acquittees whom the state sought to commit beyond their original terms bore the burden of proof by a preponderance of the evidence. Id., 411–12, 424–25.

We concluded that the acquittee's equal protection claim raised serious constitutional issues because "it is difficult to find a constitutional justification for a categorical distinction between an insanity acquittee and an incarcerated prisoner who was transferred to a mental hospital while he was serving his criminal sentence." Id., 424. Therefore, we held that "constitutional concerns lead us to construe the maximum period of commitment authorized by § 17a-582 (e) (1) (A) as a reasonably identified point of demarcation beyond which the presumption of dangerousness initially accompanying an acquittee does not continue." Id., 425. Accordingly, we concluded that "§ 17a-593 (c) impliedly imposes the same burden on the state at a hearing for the continued commitment of an acquittee beyond his current definite period of commitment as is imposed in a civil commitment hearing under § 17a-498 (c); namely, to show by clear and convincing evidence that the acquittee is currently mentally ill and dangerous to himself or herself or others or gravely disabled." Id. In sum, we determined that the acquittee bears the burden of proof at the initial commitment proceeding under § 17a-582 and if he seeks release pursuant to § 17a-593 prior to the expiration of his court-ordered term. Once that term expires, however, the burden shifts to the state, which must prove the need for continued commitment by clear and convincing evidence.

In State v. Long, supra, 268 Conn. 514, the trial court concluded that all of the procedural protections afforded in civil commitment proceedings must also be afforded in continued commitment proceedings. Consequently, the trial court struck down § 17a-593 (c) on constitutional grounds, dismissed the state's petition for continued commitment, and directed it to pursue,

instead, a petition for civil commitment before the Probate Court. Id., 514–15. We reversed the trial court's judgment, concluding that although principles of equal protection require that the burdens of proof in continued commitment and civil commitment proceedings be identical, those same principles do not require that the *procedures themselves* be identical. See id., 536–37.

## II

Having set forth the applicable law, we now address the acquittee's claims. We first address the acquittee's claim that the trial court improperly admitted the board's report because it was irrelevant and unfairly prejudicial. Specifically, he claims: (1) the board applied the incorrect legal standard of dangerousness to the acquittee and (2) the report was biased against the acquittee because the board is required by General Statutes § 17a-584[13] to consider the protection of society as its primary concern. We disagree.

As a preliminary matter, we set forth the applicable standard of review. Section 4-1 of the Connecticut Code of Evidence provides that evidence is relevant if it has "any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence." Relevant evidence may be excluded, however, "if its probative value is outweighed by the danger of unfair prejudice or surprise, confusion of the issues, or misleading the jury . . . ." Conn. Code Evid. § 4-3. Unfair prejudice exists when the evidence "tends to have some adverse effect upon [the party against whom the evidence is offered] beyond tending to prove the

---

[13] General Statutes § 17a-584 provides in relevant part: "At any hearing before the board considering the discharge, conditional release or confinement of the acquittee . . . the board shall make a finding as to the mental condition of the acquittee and, considering that its primary concern is the protection of society, shall do one of the following . . . ."

fact or issue that justified its admission into evidence." (Internal quotation marks omitted.) *Ancheff* v. *Hartford Hospital,* 260 Conn. 785, 804, 799 A.2d 1067 (2002).

"[T]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling . . . ." (Internal quotation marks omitted.) *State* v. *Gonzalez,* 272 Conn. 515, 542, 864 A.2d 847 (2005).

A

The acquittee first claims that the trial court should have excluded the report because the board improperly used the definition of dangerousness set forth in § 17a-581-2 (a) (6) of the Regulations of Connecticut State Agencies instead of the definition set forth in General Statutes § 17a-495 (b), the statute pertaining to civil commitment. He argues that if the civil "clear and convincing evidence" burden of proof applies to continued commitment proceedings, the civil definition of dangerousness also should apply. The state responds that there is no legally significant difference between the definitions of dangerousness employed in board and civil commitment hearings. Therefore, as long as the trial court applied the correct "clear and convincing" burden of proof to the case as a whole, there was no error. We agree with the state.

The acquittee claims that the civil commitment definition of dangerousness is more stringent because it "requires a 'substantial risk' of physical harm, whereas, the [board's] dangerousness standard merely requires 'a risk' of physical harm." We disagree. The regulations define " '[d]anger to self or to others' " as "the risk of *imminent* physical injury to others or self . . . includ [ing] the risk of loss or destruction of the property of

others." (Emphasis added.) Regs., Conn. State Agencies § 17a-581-2 (a) (6). In contrast, one is " 'dangerous to himself or herself or others' " in civil commitment proceedings if there is a "a substantial risk that physical harm will be inflicted by an individual upon his or her own person or upon another person . . . ." General Statutes § 17a-495 (b).

Thus, in order to meet the statutory standard, the board would have to find a substantial risk that the acquittee would harm himself or another, while, in order to meet the regulatory standard, the board would have to find an imminent risk that the acquittee would harm himself or others.[14] "Imminent" is defined as "ready to take place; esp: hanging threateningly over one's head . . . ." Merriam-Webster's Collegiate Dictionary (10th Ed. 1993). Thus, the regulatory standard is significantly more demanding than the acquittee claims. In fact, it is difficult to perceive any meaningful difference between the standards. Certainly, if the board had believed that the acquittee's release would lead to a risk of physical injury "hanging threateningly" over the acquittee or others, it must have believed that the risk of harm was substantial. In other words, if physical injury is "hanging threateningly" over a person's head, that threat necessarily creates a "substantial risk" that physical harm will be inflicted upon that person. Accordingly, we reject the acquittee's claim.

B

The acquittee next claims that the board's report to the court was irrelevant and unfairly prejudicial because its authors inherently are biased in favor of recommitment. He argues that the board's statutory

---

[14] The board found that the acquittee's "discharge or conditional release would constitute a danger to himself or others." The acquittee makes no claim that the board improperly determined that he should be recommitted because his release posed an imminent risk of the destruction of property.

mandate under § 17a-584 to consider the protection of society as its primary concern improperly biases the board in favor of commitment when its paramount consideration under the clear and convincing evidence standard should be the acquittee's liberty. In response, the state claims in the alternative that (1) the board is not biased against the acquittee and (2) even if the board is biased, the trial court, which ultimately decides whether continued commitment is appropriate, is not required to defer to the board's recommendations. Thus, the alleged bias merely effects the weight to be given to the report by the fact finder, not its admissibility. We agree with the state.

First, we consider whether the report was relevant. As we previously stated, evidence is relevant and, therefore, admissible if it has "any tendency to make the existence of any fact that is material to the determination of the proceeding more . . . or less probable . . . . " Conn. Code Evid. § 4-1. "So long as the evidence may reasonably be construed in such a manner that it would be relevant, it is admissible." (Internal quotation marks omitted.) *State* v. *Marra*, 222 Conn. 506, 521, 610 A.2d 1113 (1992).

In *State* v. *Long*, supra, 268 Conn. 536, we recognized the board's psychiatric expertise and its "general and specific familiarity with all acquittees beginning with their initial commitment . . . ." Thus, in the present case, the board's report clearly was relevant because it provided an expert assessment of the acquittee's mental state. Moreover, even if it is assumed that the board's report was biased, allegations of witness bias affect the *weight* that the fact finder gives to the evidence, not its *admissibility*. See *National Folding Box Co.* v. *New Haven*, 146 Conn. 578, 586, 153 A.2d 420 (1959) ("the acceptance or rejection of an opinion of a qualified expert is a matter for the trier of fact unless the opinion is so unreasonable as to be unacceptable to a rational

mind"); cf. *State* v. *Reid*, 254 Conn. 540, 552, 757 A.2d
482 (2000) ("[o]nce the trial court has served its gate-
keeping function in accordance with [*State* v. *Porter*,
241 Conn. 57, 69, 698 A.2d 739 (1997), cert. denied, 523
U.S. 1058, 118 S. Ct. 1384, 140 L. Ed. 2d 645 (1998)] and
determined that the expert testimony will be admitted,
any challenges to the methodology used in the [expert's
analytical] process generally go to the weight of the
testimony and not its admissibility"). The remedy is to
bring the expert witness' bias to the attention of the
fact finder, a remedy which the acquittee's counsel uti-
lized in the present case.[15]

Next, we address the acquittee's alternative claim
that even if the report was relevant, its prejudicial effect
outweighed its probative value. We disagree. "[T]here
are situations where the potential prejudicial effect of
relevant evidence would suggest its exclusion. These
are: (1) where the facts offered may unduly arouse the
jury's emotions, hostility or sympathy, (2) where the
proof and answering evidence it provokes may create
a side issue that will unduly distract the jury from the
main issues, (3) where the evidence offered and the
counterproof will consume an undue amount of time,
and (4) where the defendant, having no reasonable
ground to anticipate the evidence, is unfairly surprised
and unprepared to meet it." (Internal quotation marks
omitted.) *State* v. *Holliman*, 214 Conn. 38, 51, 570 A.2d
680 (1990).

---

[15] For example, in her concluding arguments, the acquittee's counsel
stated: "In the brief, we've set forth the burden that being under the board
places on an insanity acquittee versus individuals who are under a civil
commitment. In essence, the board is statutorily mandated to focus on the
protection of society. And, on the other hand, on the civil commitment
side, the individual's liberty interest is paramount. And, in fact, the ad hoc
committee on the insanity defense in Connecticut [issued] a report prepared
at the request of the legislature in 1994 [indicating] that insanity acquittees
spend more time in confinement with their liberty interest suspended."

We conclude that the report does not meet this standard. It contained nothing that would unduly arouse the fact finder's emotions. The report did not create a side issue or consume an undue amount of time, and the acquittee certainly anticipated the evidence because the board is required to submit this report to the trial court. See General Statutes § 17a-593 (d). Accordingly, we conclude that the trial court properly denied the acquittee's motion to strike the board's report.

## III

The acquittee next claims that the trial court's admission of the board's report violated his sixth amendment rights under the confrontation clause because he did not have the opportunity to cross-examine the report's authors. He claims that the report constituted inadmissible testimonial hearsay, meaning that it was a hearsay statement that otherwise would be admissible under the rules of evidence, but that could not be admitted without violating the confrontation clause of the sixth amendment. See *Crawford* v. *Washington*, 541 U.S. 36, 50–53, 68, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004) (admission of testimonial hearsay in criminal cases violates confrontation clause of sixth amendment to United States constitution unless witness is unavailable and defendant had prior opportunity for cross-examination). The acquittee acknowledges that the sixth amendment applies only to criminal prosecutions.[16] He urges us to hold, however, that recommitment proceedings are criminal actions because they are similar to criminal prosecutions in many respects.[17] The state responds that the sixth amendment does not apply because a

___

[16] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."

[17] The acquittee notes that his liberty is at stake in these proceedings, which are initiated by the state's attorney and have a criminal docket number.

recommitment proceeding is not a criminal prosecution. We agree with the state.

The question of whether continued commitment proceedings are criminal prosecutions to which the sixth amendment applies is a question of law. Accordingly, our review is plenary. See *Duperry* v. *Solnit*, 261 Conn. 309, 318, 803 A.2d 287 (2002).

In *Kansas* v. *Hendricks*, 521 U.S. 346, 361–69, 117 S. Ct. 2072, 138 L. Ed. 2d 501 (1997), the United States Supreme Court addressed the question of whether the commitment of prison inmates as sexually violent predators is a civil proceeding. In that case, the state of Kansas filed a petition seeking civil confinement of a prison inmate who was a pedophile pursuant to Kansas' recently enacted Sexually Violent Predator Act (act).[18] Id., 353–54. The trial court granted the state's petition, but the state Supreme Court reversed the trial court's judgment, holding that the act violated the inmate's substantive due process rights. Id., 355–56. Both parties appealed to the United States Supreme Court, where the inmate claimed, inter alia, that the act violated the double jeopardy and ex post facto clauses of the United States constitution. Id., 350, 360–61.

The court held that these constitutional protections did not apply because the proceeding to commit the inmate was not a criminal prosecution. Id., 361, 369. In reaching this conclusion, the court observed that the two primary objectives of criminal punishment are retribution and deterrence. Id., 361–62. It concluded that, because the primary purpose of the act was to protect the public, rather than to punish the committee, the act did not establish criminal proceedings; id., 363, 369;

---

[18] The act "establishe[d] procedures for the civil commitment of persons who, due to a 'mental abnormality' or a 'personality disorder,' are likely to engage in 'predatory acts of sexual violence.'" *Kansas* v. *Hendricks*, supra, 521 U.S. 350.

and the double jeopardy and ex post facto clauses, therefore, did not apply. Id., 369, 371.

Like the proceedings at issue in *Hendricks*, the primary purpose of continued commitment proceedings is to protect society and to treat the acquittee's mental illness, not to punish the acquittee. *Payne* v. *Fairfield Hills Hospital*, 215 Conn. 675, 683–84, 578 A.2d 1025 (1990) ("[C]onfinement of insanity acquittees, although resulting initially from an adjudication in the criminal justice system, is not punishment for a crime. The purpose of commitment following an insanity acquittal, like that of civil commitment, is to treat the individual's mental illness and protect him and society from his potential dangerousness." [Internal quotation marks omitted.]). Accordingly, we conclude that continued commitment proceedings are not criminal prosecutions and, therefore, the confrontation clause of the sixth amendment does not apply and did not preclude the report's admission in this case.

## IV

Finally, the acquittee claims that, even if we conclude that a continued commitment hearing is civil in nature, admission of the report violated the acquittee's procedural due process rights.[19] The state responds that the acquittee was provided with constitutionally adequate procedures. We agree with the state.

The question of whether the trial court's admission of the report violated the acquittee's procedural due process rights is a question of law. Therefore, our review is plenary. *State* v. *Long*, supra, 268 Conn. 520–21.

The record reveals the following additional relevant facts and procedural history. The state initiated this

[19] Although the acquittee claims that he was "deprived of his liberty without substantive and procedural due process of law," he analyzes his argument as a procedural due process claim. Therefore, we will address it as such.

action by filing a petition for continued commitment of the acquittee with the Superior Court. Pursuant to § 17a-593 (d), the board then investigated whether the acquittee was "a person who should be discharged" by holding an evidentiary hearing during which it heard testimony from Carol Knight, a licensed clinical social worker at Whiting, and Patrick Fox, a consulting forensic psychiatrist who had testified regularly before the board. The acquittee was represented before the board by a deputy assistant public defender. He did not call any witnesses at the hearing. Two weeks after the hearing, the board issued a written decision recommending that the court should recommit the acquittee to Whiting for a period of time not to exceed five years.

On August 19, 2002, the trial court held a separate evidentiary hearing, during which it considered evidence presented by both parties in addition to the board's report. The state presented two witnesses: Enayat Khorramzadeh, the acquittee's treating psychiatrist at Whiting, and Fox. The acquittee submitted various exhibits, including the transcript from a 1994 hearing before the board, copies of treatment notes taken by the acquittee's former therapist, a psychological assessment report prepared at Whiting in 1993, and Probate Court documents appointing and later terminating a conservator for the acquittee in 1998 and 1999. Will Brady, a patient advocate at Whiting, testified on behalf of the acquittee.

We previously have recognized that "[d]ue process is inherently fact-bound because due process is flexible and calls for such procedural protections as the particular situation demands. . . . The constitutional requirement of procedural due process thus invokes a balancing process that cannot take place in a factual vacuum. . . .

"The United States Supreme Court [has] set forth three factors [which this court has followed] to consider

when analyzing whether an individual is constitutionally entitled to a particular judicial or administrative procedure: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews* v. *Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). . . . Due process analysis requires balancing the government's interest in existing procedures against the risk of erroneous deprivation of a private interest inherent in those procedures." (Citations omitted; internal quotation marks omitted.) *State* v. *Long*, supra, 268 Conn. 523–24.

"The fundamental requisite of due process of law is the opportunity to be heard . . . [which] must be at a meaningful time and in a meaningful manner. . . . [T]hese principles require that a [party] have timely and adequate notice detailing the reasons for [the proposed action], and an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally." (Internal quotation marks omitted.) Id., 525.

Applying the *Mathews* test to the facts of this case, we conclude that the trial court's admission of the report did not deprive the acquittee of a meaningful opportunity to be heard. The procedures governing the recommitment of insanity acquittees undoubtedly affect an important private interest, namely the acquittee's interest in liberty. "[T]here can be no doubt that involuntary commitment to a mental hospital, like involuntary confinement of an individual for any reason, is a deprivation of liberty . . . . [C]ommitment for any purpose constitutes a significant deprivation of liberty

that requires due process protection . . . ." (Citation omitted; internal quotation marks omitted.) Id., 524. Turning to the third factor of the *Mathews* test, we also conclude that it is "undisputed that the state has an interest in confining individuals who, as a result of mental illness, pose a potential danger to themselves or others." Id. It is clear, therefore, that both parties' interests are substantial.

Accordingly, we focus our analysis on the second factor of the *Mathews* test: "the risk of an erroneous deprivation [of the acquittee's liberty] through the procedures used . . . ." (Internal quotation marks omitted.) Id. We conclude that the procedures used in this case adequately protected the acquittee's liberty interest and that admission of the report into evidence did not deprive him of due process. The acquittee received a meaningful opportunity to be heard. He was represented by counsel before the board, and he could have presented his own witnesses at the board hearing. See General Statutes § 17a-595. Thus, he had the opportunity to influence the board's decision before it even issued its report to the court.

At trial, the acquittee could have cross-examined all of the witnesses who testified at the board hearing, and he could have presented his own expert witness at the state's expense. See General Statutes § 17a-593 (e).[20] The trial court also had access to the transcript of the board's hearing, to the acquittee's medical records, and to other pertinent documents.

---

[20] General Statutes § 17a-593 (e) provides in relevant part: "Within ten days of . . . receipt of the board's report . . . counsel for the acquittee may file notice of intent to perform a separate examination of the acquittee. An examination conducted on behalf of the acquittee may be performed by a psychiatrist or psychologist of the acquittee's own choice and shall be performed at the expense of the acquittee unless he is indigent. If the acquittee is indigent, the court shall provide him with the services of a psychiatrist or psychologist to perform the examination at the expense of the state. . . ."

Moreover, unlike decisions rendered by other administrative agencies, the report to which the acquittee objects is not subject to deferential review by the trial court. Compare *Board of Education* v. *Commission on Human Rights & Opportunities*, 266 Conn. 492, 503, 832 A.2d 660 (2003) (describing limited standard of review for agency decisions) with General Statutes § 17a-593 (f) and (g) (directing trial court to consider other evidence at recommitment hearing and to draw its own factual and legal conclusions). Consequently, the acquittee was free to rebut the board's recommendation in the report by calling witnesses and by presenting his own evidence. We conclude that the acquittee was provided with constitutionally adequate procedural protections.

The judgment is affirmed.

In this opinion the other justices concurred.